UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARNELL JOHNSON, *Plaintiff*, | : : : |
| v. | : : CASE NO. 3:25-cv-1617 (KAD) |
| ROBERT GREENE, JR., *Defendant*. | : : : |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge

**Preliminary Statement**

Marnell Johnson ("Plaintiff"), a federal inmate currently incarcerated at FCI Fort Dix in New Jersey, filed this complaint *pro se* bringing claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*") against Defendant Robert Greene, Jr. ("Defendant"), a doctor at FCI Danbury. Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. For the following reasons, Plaintiff may pursue this claim against Defendant.

**Allegations**

The Court does not set forth all the facts alleged in Plaintiff's Complaint. Instead, it summarizes his basic factual allegations here only to give context to its ruling below.

While Plaintiff was still imprisoned at FCI Danbury, he "became ill with a persistent cough, fever, shortness of breath, and chest pain" on or about March 23, 2024. Compl., ECF No. 1, ¶¶ 5, 8. Plaintiff submitted "multiple request[s]" to medical staff seeking treatment for the illness. *Id.* ¶ 8. Plaintiff also filed a grievance against Defendant, who is a doctor at FCI Danbury. *Id.* Plaintiff saw Defendant on April 11, 2024. *Id.* ¶ 9. Defendant "told Plaintiff that his symptoms were a common cold and denied his request for an x-ray or proper examination, even as Plaintiff's breathing

became more labored." *Id*. On May 28, 2024, Plaintiff "was found barely conscious in his dorm, and was rushed to the FCI Danbury infirmary, where he was immediately diagnosed with severe pneumonia." *Id.* ¶ 10 (internal quotation marks omitted). Defendant saw Plaintiff again on July 11, 2024, but Defendant "refused to order a chest x-ray, despite hearing 'fluid' in [Plaintiff's] lungs." *Id.* ¶ 11. Defendant "prescribed only a low-dose of Tylenol." *Id.* As a result of deficient medical treatment, Plaintiff sustained "permanent damage to his lungs." *Id.*

In another incident, beginning in February 2025, Plaintiff "suffered from painful and discolored nails" and "foot problems." *Id.* ¶ 13. Defendant "consistently denied treatment" for this condition, telling Plaintiff that "the condition was 'cosmetic' and not serious enough for [Defendant's] attention, even though Plaintiff had trouble walking." *Id.* ¶ 14. Another FCI Danbury doctor later diagnosed Plaintiff as having onychomycosis,[1] which "required significant medical intervention." *See id.* ¶ 15 (internal quotation marks omitted). As a result of deficient medical treatment, "the infection spread, and Plaintiff now suffers from permanent disfigurement and pain." *Id.* ¶ 16.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In doing so, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude

---

[1] Onychomycosis is "any fungal infection of the nails." *Onychomycosis Definition*, *Mosby's Medical Dictionary* (7th ed. 2006), at 1331.

for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Discussion**

Plaintiff seeks damages from Defendant under *Bivens*. Compl., ECF No. 1, ¶ 4. To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).

Not all constitutional violations give rise to a damages remedy under *Bivens*. The Supreme Court has recognized a remedy for damages in only three contexts: (1) a Fourth Amendment search and seizure suit against federal narcotics officers (*Bivens*); (2) a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an Eighth Amendment cruel and unusual punishment suit against federal jailers for failure to provide adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)). *See Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

To determine whether a plaintiff's claim may proceed under *Bivens*, the Court must conduct a two-step analysis. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). The first step asks, "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (quoting *Abbasi*, 582 U.S. at 139). If a case arises in a "new *Bivens* context," the Court proceeds to the second step, where it considers "whether

3

there are any special factors that counsel hesitation about granting the extension" of *Bivens* into a new context. *Hernández v. Mesa*, 589 U.S. 93, 102 (2020) (cleaned up).

"Courts considering medical claims filed under *Bivens* have routinely found variances in circumstances and severity [that] render deliberate indifference claim[s] different from *Carlson* and thus aris[ing] in a 'new context.'" *Churuk v. Canarozzi*, No. 22-CV-1395 (VDO), 2024 WL 2149036, at *10 (D. Conn. Apr. 2, 2024) (internal quotation mark omitted). But for purposes of initial review, the "circumstances and severity" of the harm here is sufficiently similar to that in *Carlson* such that Plaintiff's claim does not arise in a new *Bivens* context. *See id.* at *10–11 (denying Defendant's motion to dismiss *Bivens* claim asserting "that defendants Greene and Escobar were deliberately indifferent to [plaintiff's] medical needs when they failed to restore his prescription for Gabapentinm," finding that "this claim strongly resembles the claim in *Carlson*" because "Plaintiff is claiming deliberate indifference to medical needs by medical providers"). Accordingly, the Court now considers whether Plaintiff's allegations are sufficient to state an Eighth Amendment deliberate indifference claim.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to serious medical needs, the prisoner must allege facts satisfying two components, one objective and one subjective. *See id.*

The objective component requires the prisoner to demonstrate that the alleged deprivation of medical care was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The prisoner must show that he was "actually deprived of adequate medical care" by an official's failure "to take reasonable measures in response to a sufficiently

4

serious medical condition." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

This objective showing in turn requires a court to make two inquiries. First, the Court must determine whether the inmate was "actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious," requiring an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner." *Id.* at 280. This examination differs based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). This inquiry is necessarily contextual and fact-specific. *Id.* at 185.

"[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith*, 316 F.3d at 185–86). Deciding whether a condition is sufficiently serious requires courts to consider whether "'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000).

5

If treatment is given but the inmate alleges it is inadequate, "the seriousness inquiry is narrower." *Id.* The Court then focuses on the "inadequacy itself." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). If "the basis for a prisoner's Eight Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* . . . rather than the prisoner's *underlying medical condition* alone" to determine whether the deprivation is objectively sufficiently serious. *Smith*, 316 F.3d at 185 (emphasis in original); *see also Robbs v. McCrystal*, No. 3:20-CV-1584 (MEG), 2023 WL 2526533, at *9 (D. Conn. Mar. 15, 2023).

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of recklessness' as used in criminal law." *Smith*, 316 F.3d at 184 (quoting *Chance*, 143 F.3d at 702); *see also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (citing *Hathaway*, 99 F.3d at 553). "A plaintiff cannot establish a claim of deliberate indifference on a theory that the defendant failed to take some available alternative or additional diagnostic techniques or forms of treatment when the defendant's decision is based on sound medical judgment." *Clark v. Quiros*, 693 F. Supp. 3d 254, 286 (D. Conn. 2023) (noting that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual

6

punishment. At most it is medical malpractice . . . ." (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976))). Further, a patient's disagreement over the treatment provided does not rise to the level of deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (summary order) (citing *Chance*, 143 F.3d at 703).

Plaintiff alleges two instances of deliberate indifference in his Complaint, one involving his "persistent cough, fever, shortness of breath, and chest pain," Compl. ¶ 8, and one involving his onychomycosis condition. *Id.* ¶ 15. The Court must separately consider whether Plaintiff's allegations meet the objective component in each instance. *See Smith*, 316 F.3d at 185.

Plaintiff alleges that Defendant diagnosed Plaintiff's respiratory illness as a "common cold" and twice denied Plaintiff's requests for an x-ray, instead prescribing Tylenol. Compl. ¶¶ 9, 11. These allegations suggest that Defendant provided medical care to Plaintiff but that it was ineffective. Thus, the Court must consider the inadequacy of the treatment itself. *See Valdiviezo*, 752 F. App'x at 32. Plaintiff's allegations plausibly allege that Defendant's treatment of Plaintiff's respiratory illness was inadequate: the Complaint alleges that Defendant only treated Plaintiff with Tylenol, even though Plaintiff's breathing was labored, and he observed fluid in Plaintiff's lungs. Compl. ¶¶ 9, 11. As a result, Plaintiff eventually contracted "severe pneumonia, which caused permanent damage to [Plaintiff's] lungs." Compl. ¶ 12; *see Valdiviezo*, 752 F. App'x at 32 (medical care was inadequate where "it could have resulted in more serious injury"). Thus, Plaintiff's allegations related to his respiratory illness satisfy the objective component.

Plaintiff's allegations related to his onychomycosis condition also satisfy the objective component. Plaintiff alleges that Defendant "consistently denied treatment" for Plaintiff's onychomycosis condition, "stating that the condition was 'cosmetic' and not serious enough for

7

[Defendant's] attention." Compl. ¶ 14. Because Defendant failed to provide any medical care to Plaintiff for this condition, the Court "examine[s] whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. While "some courts in this Circuit have concluded that 'toe fungus' was not a serious medical need, . . . other courts in this District have assumed that toenail fungus can be a serious medical need if it causes 'associated pain[.]'" *Shabazz v. Brunelle*, No. 3:25-CV-60 (VAB), 2025 WL 1726323, at *7 (D. Conn. June 20, 2025) (citations omitted) (assuming that "Athlete's Foot and toenail fungus caus[ing] non-stop itching, burning skin, loss of sleep, toenail discoloration, physical and mental pain, loss of appetite, and depression" was sufficiently serious for purposes of initial review); *see also Romero v. Folino*, No. 13-V-0691 (AJS), 2014 WL 710025, at *8–9 (W.D. Pa. Feb. 25, 2014) (concluding that onychomycosis condition leading to "degeneration of his toenail" and "physical pain" was "sufficiently serious"). The Court assumes the same here. Accordingly, the objective element is satisfied.

Whether Plaintiff's allegations satisfy the subjective element is a closer question. Defendant's decision "not to order an X-ray, or like measures" is insufficient to establish the subjective element. *See Clark*, 693 F. Supp. 3d at 286. But Defendant's decision to "prescribe[] only a low-dose of Tylenol," after Plaintiff had labored breathing and fluid in his lungs, and was later "found barely conscious in his dorm" and "diagnosed with severe pneumonia," Compl. ¶¶ 9–11 (internal quotation marks omitted), plausibly alleges that Defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). Likewise, Defendant's refusal to provide medical care for Plaintiff's onychomycosis condition despite Plaintiff's difficulty with walking, Compl. ¶ 14, is sufficient, at this nascent stage, to show Defendant knew of and disregarded an excessive risk to Plaintiff's health and safety.

**Orders**

Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs may proceed to service against Defendant Dr. Robert Greene, Jr.

The Court enters the following additional orders.

(1) The Clerk shall mail a copy of the Complaint and a waiver of service of process request packet to Dr. Robert Greene, Jr. at FCI Danbury by **December 31, 2025**, and report to the Court on the status of the waiver request on the **thirty-fifth day** after mailing. If Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on Defendant in his individual capacity and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send Plaintiff a copy of this Order and a courtesy copy of this Order to Assistant United States Attorney Michelle McConaghy at the US Attorney's Office for the District of Connecticut.

(2) Defendant shall file his response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver of service forms are mailed to them. If Defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. Defendant also may include all additional defenses permitted by the Federal Rules.

(3) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **July 11, 2026**. Discovery requests need not be filed with the court.

(4) All motions for summary judgment shall be filed on or before **August 10, 2026**.

(5) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(6) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendant or the attorney for Defendant of his new address.

**SO ORDERED** this 10th day of December, 2025 at Bridgeport, Connecticut.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE